**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

RONALD MUHAMMAD,

               Plaintiff,              **THIRD AMENDED COMPLAINT**

vs.                    **Case No: 22-CV-6025-FPG-MJP**

ANTHONY ANNUCCI, et al,

               Defendants.

---

    COMES NOW, Plaintiff Chaplin RONALD MUHAMMAD, hereinafter ("MUHAMMAD") or ("the Plaintiff"), in and for himself *pro se*, promulgates his Third Amended Complaint by leave of the Court pursuant to pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, for the unlawful discrimination by the Defendant(s) New York State Department of Corrections and Community Supervision, hereinafter ("the Defendants") or ("DOCCS"), in violation of the [Equal Protection Clause] of the Fourteenth Amendment of the United States Constitution and [Employment Retaliation], in violation of Title VII of the Civil Rights Act of 1964 and New York State Human Rights Law ("NYSHRL"). This complaint shall supplant all previous complaints. Upon information and belief, and at all times hereinafter, avers the following:

## JURISDICTION AND VENUE

    1.    This civil action is brought against DOCCS for their explicit violation of Equal Protection Rights under the Fourth Amendment to the United States Constitution, 42

U.S.C. § 1983, *as amended*, and their egregious Employment Retaliation under 42 U.S.C. § 2000e, et seq. ("Title VII of the Civil Rights Act of 1964"), *as amended*, and the New York State Human Rights Law ("NYSHRL"), § 290-297 and Executive Law § 296(7).

2.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 2000e et seq.

3.    The venue of this action is proper under 28 U.S.C. §1391.

4.    MUHAMMAD is a resident of the County of Monroe in the State of New York.

5.    MUHAMMAD is an ordained Nation of Islam Chaplain and employee of DOCCS.

6.    These causes of action arose out of MUHAMMAD's employment with DOCCS in his religious service duties for DOCCS' inmates of the Muslim faith.

7.    DOCCS is a New York State agency that employs in excess of fifteen (15) employees and is an employer within the meaning of Title VII of the Civil Rights Act of 1964 and the New York State Human Rights Law ("NYHRL").

8.    MUHAMMAD timely filed his charge of discrimination on March 2, 2021, with the New York State Division of Human Rights ("SDHR").

9.    The SDHR issued a Determination After Investigation on June 14, 2021, finding *probable cause* that the Defendants collectively engaged in discrimination against me in violation of the New York State Human Rights law.

10.    MUHAMMAD has complied with all precedent conditions, and the instant

~ 2 ~

action is brought against Defendants within all applicable time limits as stated under New York and Federal law.

## STATEMENT OF FACTS

11.    On September 15, 2005, MUHAMMAD was hired by DOCCS as a Nation of Islam Chaplain to provide religious services for Muslim inmates.  He was initially assigned to the Clinton Correction Facility.

12.    In June of 2019, MUHAMMAD was assigned to the Five Points Correctional Facility where the gravamen of the unlawful discrimination took place.

13.    MUHAMMAD, a Nation of Islam Chaplain for the Nation of Islam, suffered adverse and disparate treatment when he was prevented on several occasions from bringing his "Final Call Newspaper," the official religious publication of the Nation of Islam, into the Five Points Correctional Facility in his regular course of ministerial duties.  He contemporaneously observed on numerous occasions that other similarly situated ministers did not experience the same disparate treatment of their materials for their religion.

14.    The Defendants denied the claim and maintained that MUHAMMAD has a history of bypassing Facility Media Review ("FMR"), which is purportedly required for all publications coming into the facility. MUHAMMAD asserts that on several occasions attempted to have FMR approve his publications, but his supervisor prevented him from doing so.

15.    Additionally, the Defendants engaged in this disparate practice without a contemporaneous written policy, and forced "Muslim inmates to require having a

subscription to his Final Call newspaper material, if they wish to access to publication other than one copy that is kept in a locker for inmates to share," These disparate actions, *standing alone*, is a violation of his Equal Protection Rights under the Fourth Amendment of the United States Constitution.

16.    MUHAMMAD observed that inmates who are either Christian or Jewish have full access to donated religious publications without having to share one copy maintained in a locker. At the same time, MUHAMMAD is not permitted to bring donated Final Call publications into the Five Points Correctional Facility.

17.    Although the Defendants assert a legitimate business reason for promoting order and safety as to why they maintain a media review policy, nevertheless, the Nation of Islam's Final Call publication is being treated differently than the other religious publications and other religious material is held to a different standard and is not being treated similarly.

18.    There are issues of material fact remaining, *including but not limited to*, the Defendant's disparate treatment of MUHAMMAD's Muslim faith and religious practice, treatment of his Nation of Islam religious publications, specifically, the Final Call Newspaper, the Defendant's disparate treatment of Final Call Newspapers concerning the purported media review process.

19.    Additionally, the Defendants arbitrarily required Muslim inmates to obtain a paid subscription or otherwise share one copy retained in a designated facility locker when the religious materials of other religious faiths were not subjected to the same

discriminatory, arbitrary, and disparate treatment.    They did do without any known contemporaneous written policy.

20.    Because MUHAMMAD opposed the Defendant's disparate treatment of his religious material for Muslim inmates, the Defendants suspended him from duty without pay and is seeking the penalty of termination because of his opposition to their unlawful discrimination.

## ARGUMENT

### Employment Retaliation Interfering with Judicial Proceeding

21.    On August 8th, 2024, upon the order of the court, this matter was referred to the Magistrate Judge for, *inter alia*, discovery matters.

22.    On October 4, 2024, the court rendered orders regarding our ongoing production of records and admissions discovery process. (Doc. No's. 72, 73.)

23.    On or about October 15, 2024, the Defendants served MUHAMMAD their NOTICE OF DISCIPLINE ("NOD").    Pursuant to their NOD, MUHAMMAD was *suspended from employment without pay* and the Defendants are now seeking the *penalty of termination*.    See attached Defendant's NOD and attachment.

24.    The Defendant's NOD alleges the following misconduct, which states the following:

**"DISMISSAL FROM SERVICE AND LOSS OF ANY ACCRUED ANNUAL LEAVE"**

"The reason for this discipline is misconduct as follows:

1.    On October 4, 2024, at approximately 4:00 p.m., while assigned to Five

~ 5 ~

Points Correctional Facility you were found to have introduced and/or possessed contraband on facility grounds in violation of DOCCS Employees' Manual §2.2, §2.16, §2.23, §2.30, and/or DOCCS Directive #4936, Search of DOCCS Employees, Attachment A, Staff Allowable Items. Specifically, Lieutenants Jeffrey Rorick and John Wade retrieved approximately 267 unapproved copies of the "Final Call" newsletter that belong to you from desk drawers and filing cabinets in the Chaplain area.

2. On or sometime prior to October 4, 2024, while assigned to Five Points Correctional Facility you failed to follow proper protocol in violation of DOCCS Employees' Manual §2.2, §2.16, §2.23, §2.30, and/or DOCCS Directive #4936, Search of DOCCS Employees, Attachment A, Staff Allowable Items. Specifically, you failed to apply for gates passes and complete Form 3084, Record of Donations - Volunteer Services for 267 copies of the "Final Call" newsletter."

3. On October 11, 2024, at approximately 8:45 a.m., while on duty at Five Points Correctional Facility you failed to exercise respectful communication in the workplace, in violation of DOCCS Employees' Manual §2.2, §2.23, and §2.7. Specifically, when Officer Donna Kobbe advised you that she was going to conduct a frisk search you became defiant and stated in sum or substance that "as an employee I am not subject to frisk searches."

4. On October 11, 2024, at approximately 8:45 a.m., while on duty at Five Points Correctional Facility you were found to introduce and or possess contraband on facility grounds in violation of DOCCS Employees' Manual §2.2, §2.16, §2.23, §2.30, and/or DOCCS Directive #4936, Search of OOCCS Employees, Attachment A, Staff Allowable Items. Specifically, when Officer Donna Kobbe conducted a frisk search of your person you were found to be in possession of 2 unapproved copies of the "Final Call" newsletter.

5. On October 11, 2024, at approximately 8:45 a.m., while on duty at Five Points Correctional Facility you failed to follow proper protocol in violation of DOCCS Employees' Manual §2.2, §2.16, §2.23, §2.30, and/or DOCCS Directive #4936, Search of OOCCS Employees, Attachment A, Staff Allowable Items. Specifically, you failed to apply for gates passes

and complete Form 3084, Record of Donations - Volunteer Services for 2 copies of the "Final Call" newsletter."

25.    Here, the Defendant's contrived baseless disciplinary charges against MUHAMMAD are undeniably *analogous* and *related* to his claims before this court and currently in the discovery process.

26.    MUHAMMAD avers that the Defendant's retaliation is clearly intended to unlawfully discourage him and other state employee witnesses from supporting his case and pursuing judicial remedies. The Defendant's deliberate retaliatory actions violate his civil rights under 42 U.S.C. § 2000e, et seq. ("Title VII of the Civil Rights Act of 1964"), *as amended*, and the New York State Human Rights Law ("NYSHRL"), § 290-297 and Executive Law § 296(7).

27.    MUHAMMAD avers that their unambiguous timing of administrative charges during this court's discovery process is consistent with their history of ongoing pattern and practice of abject employment discrimination.

28.    MUHAMMAD avers that the Defendant's unbridled illicit conduct to suspend him without pay and seek termination of his employment for charges currently before this court, *standing alone*, is *substantial credible evidence* of their animus and intent to interfere with this court's judicial administration and to "dissuade a reasonable worker" as witnesses from supporting his employment discrimination cause of action. *Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006); NYS Division of Human Rights v. St. Elizabeth's Hospital (1991).*

29.    MUHAMMAD avers that the overt *causal connection* between the

~ 7 ~

Defendant's gratuitous administrative charges and his *protected activity* in acquiring production of records and admissions, is a blatant obstruction of justice offense by unduly influencing, impeding, and otherwise interfering with the administration of justice in this court proceeding. 18 U.S.C. § 1503 and § 1512, *Fischer v. United States, (broadly to cover coercive behavior that obstructs the administration of justice.); United States v. Saget, (The court held that the omnibus clause of § 1503 should be interpreted broadly to include any conduct that interferes with the fair administration of justice.)*

### AS AND FOR A FIRST CAUSE OF ACTION
**(Equal Protection Discrimination in Violation
the Fourteenth Amendment of the United Sates
Constitution, 42 U.S.C. § 1983)**

30.     Plaintiff repeats and realleges the allegations in paragraphs "1" through "29" of the Complaint as if fully stated herein.

31.     The Equal Protection Clause of the Fourteenth Amendment provides that no "State [shall] deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1. It thus "requires the government to treat all similarly situated people alike." *Afr. Trade & Info. Ctr., Inc. v. Abromaitis, 294 F.3d 355, 362 (2d Cir. 2002)*.

32.     A viable claim under the Equal Protection Clause requires the plaintiffs to allege that they were treated differently as compared to similarly situated persons, based on intentional or purposeful discrimination. *Phillip v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005)*. "Membership in a particular religious faith will generally satisfy the protected-class

requirement" of an Equal Protection claim. *Barnes v. Fedele, 760 F. Supp. 2d 296, 301 (W.D.N.Y. 2011) (citing Bizzarro v. Miranda, 394 F.3d 82, 86 (2d Cir. 2005).*

33.     Courts require "only that plaintiffs show that they are roughly equivalent to the proffered comparators," as opposed to an "extremely high level of similarity." *Hu v. City of New York, 927 F.3d 81, 90 (2d Cir. 2019) (internal quotation marks omitted).* "While inmates enjoy no constitutional or legal right to receive religious materials at government expense, the Equal Protection Clause of the Fourteenth Amendment prevents Defendants from granting differential access to religious materials based on . . . faith." *Thompson v. Renee, No. 21 Civ. 10371 (VEC), 2023 WL 2575222, at *8 (S.D.N.Y. Mar. 17, 2023) (internal quotation marks omitted).*

34.     The court reasoned that the Defendants addressed MUHAMMAD's Equal Protection claim only briefly, claiming that the second amended complaint is "devoid of any allegation of purposeful discrimination," and that Plaintiff's allegations "that other faith groups were allowed to have access to their religious materials are far too speculative" to satisfy the pleading requirements. ECF No. 45-2 at 21-22.

35.     The court reasoned that "although Defendants' policy ostensibly treats all religious literature the same, however in practice, Nation of Islam materials are treated differently with respect to media review, donations, and subscription requirements." See ECF No. 5 at 8. He alleges that "Christian . . . and other faith groups can receive donated materials delivered to Five Points on a regular basis," whereas donated Nation of Islam materials are not allowed.   ECF No. 6, 8.

36.    The court reasoned that MUHAMMAD directly compares his treatment with those of his "co-workers from different faiths," who were permitted to distribute religious literature without restriction. Id. at 8. Finally, MUHAMMAD alleges he was permitted to keep only a single copy of Final Call in a locker, but that he witnessed other religious publications being "scattered" in the facility in plain view. Id. These allegations are far from speculative, but rather rely on specific instances of allegedly discriminatory behavior. *See ATSI Commc'ns, 493 F.3d at 98.*

37.    The court reasoned that the "Defendants may dispute the veracity of Plaintiff's claims, but at this stage the Court is obliged to treat Plaintiff's allegations as true. *See Iqbal, 556 U.S. at 678.* Accordingly, the Court found that the Plaintiff has plausibly alleged that Defendants' restriction of Plaintiff's Nation of Islam materials violates his Equal Protection rights ..."

38.    To prove an Equal Protection discrimination case, a plaintiff generally needs to demonstrate that they were treated differently from others similarly situated, and that this disparate treatment was based on their membership in a protected class (e.g., race, gender, national origin, religion).

39.    Under both New York State Human Rights Law (NYSHRL) and the Fourteenth Amendment, plaintiffs must typically show they belong to a protected class that may include race, color, religion, national origin, sex, and more. Unlike disparate impact cases (where a neutral policy has a discriminatory effect), Equal Protection claims generally require proof of intentional discrimination as it may exist here.

~ 10 ~

40.    This may include statements by decision-makers, statistical evidence of a pattern of discrimination, similarly situated comparators or other indirect indicators (e.g., prior history of discriminatory practices).

41.    MUHAMMAD avers that he was treated less favorably than other similarly situated clergy ministers outside his protected class of Nation of Islam religion in comparison to:

a) Deacon Thomas Ruda, Jewish, from the Five Points Correctional Facility.
b) Rabbi Thomas Max, Jewish, from the Marcy Correctional Facility.
c) Reverend Michael Henderson, Protestant, from the Five Points Correctional Facility.
d) Imam Abdalla Hadian, Muslim of a different <u>sect</u> and favored by DOCCS, from the Marcy Correctional Facility.
e) Reverend Ellis, Protestant, from the Marcy Correctional Facility.

42.    These clergy ministers are individuals employed by DOCCS and who are similarly situated to MUHAMMAD but are treated differently and more favorably under similar circumstances regarding review and possession of their religious material.

43.    Courts often scrutinize comparators to ensure they are truly similar in all relevant respects.  MUHAMMAD intends to call these individuals as witnesses to testify under the penalty of perjury.

44.    The Defendants may attempt to justify their actions based on a legitimate government interest; however, MUHAMMAD may demonstrate that their justification is pretextual and inadequate.

45.    MUHAMMAD is indisputably suffering harm by DOCCS suspension from

duty without pay and move to terminate his employment as a causal connection to this court's judicial proceeding.

46.    Even if no class-based discrimination is evident, MUHAMMAD can proceed on a "class of one" theory, if he can show that he was singled out arbitrarily. *Village of Willowbrook v. Olech (528 U.S. 562, 2000).*

47.    As a direct result of Defendants' discriminatory, unlawful, and illegal employment practices and conduct, MUHAMMAD has suffered embarrassment and the indignity of disparate treatment of discrimination.

48.    As a direct result of Defendants' discriminatory, unlawful, and illegal employment practices and conduct, MUHAMMAD has suffered emotional and mental anguish and distress, loss of income and benefits, disruption of her personal life and loss of the enjoyment of life.

49.    As a direct result of Defendant's discriminatory, unlawful, and illegal employment practices and conduct, MUHAMMAD was unlawfully subjected to discrimination, hostile work environment, suspended from duty without pay, and faces termination in violation of Title VII.

50.    Defendants' violation of the law has resulted in significant and consequential damages in the past, present, and continuing into the future, including, but not limited to, back and front pay, compensatory damages, punitive damages, and attorneys' fees and costs in prosecuting the instant action.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Employment Retaliation Under Title VII of the
### Civil Rights Act of 1964 and NYSHRL)

51.    Plaintiff repeats and realleges the allegations in paragraphs "1" through "50" of the Complaint as if fully stated herein.

52.    The Defendant's baseless and gratuitous disciplinary charges against MUHAMMAD are undeniably *analogous* to his claims before this court and currently in the discovery process should be deemed unlawful retaliation.

53.    The Defendant's retaliation is clearly intended to unlawfully discourage him and other state employee witnesses from supporting his case, intended to discourage MUHAMMAD from pursuing judicial remedies and intended to interfere with the court's judicial progress.  The Defendant's deliberate retaliatory action violates MUHAMMAD's civil rights under 42 U.S.C. § 2000e, et seq. ("Title VII of the Civil Rights Act of 1964"), *as amended*, and the New York State Human Rights Law ("NYSHRL"), § 290-297 and Executive Law § 296(7).

54.    The Defendant's unambiguous timing of administrative charges during this court's discovery process is consistent with their history of ongoing pattern and practice of abject employment discrimination.

55.    The Defendant's unbridled illicit conduct to suspend him without pay and seek termination of his employment for charges currently before this court, *is standing alone, substantial credible evidence* of their animus and intent to interfere with this court and "dissuade a reasonable worker" as witnesses from supporting his employment

discrimination cause of action. *Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006); NYS Division of Human Rights v. St. Elizabeth's Hospital (1991)*.

56. The Defendant's overt *causal connection* between their gratuitous administrative charges and MUHAMMAD*'s protected activity* in acquiring production of records and admissions, is a blatant attempt to unduly influencing, impeding, and otherwise interfering with the administration of justice in this court proceeding. 18 U.S.C. § 1503 and § 1512, *Fischer v. United States, (broadly to cover coercive behavior that obstructs the administration of justice.); United States v. Saget, (The court held that the omnibus clause of § 1503 should be interpreted broadly to include any conduct that interferes with the fair administration of justice.)*

57. In a recent key retaliation and discrimination court case *Muldrow v. City of St. Louis (2024)*, the U.S. Supreme Court revised its standard for what constitutes an "adverse employment action" under Title VII of the Civil Rights Act. Previously, courts required that a claimant demonstrate a "material" or "significant" disadvantage to show adverse action, typically needing a change like reduced pay, benefits, or rank.

58. However, the Supreme Court clarified that plaintiffs now need to show only "some disadvantage" impacting the terms or conditions of employment, not necessarily a substantial one.

59. This shift affects cases of alleged retaliation when employees are transferred or reassigned in ways that might affect their job satisfaction or responsibilities without significantly impacting pay or status. This lower threshold broadens the types of

employment changes that could support a discrimination or retaliation claim, potentially allowing minor changes, such as altered job duties or shift assignments, to proceed under Title VII if they are seen as disadvantageous.

60.    This decision marks a significant shift, making it easier for employees to bring forward cases when they experience less tangible but adverse changes in their work environment, even if their pay or title remains unaffected. Accordingly, employers are now subject to more weighty scrutiny under the revised Title VII standard.

61.    Defendants discriminated against MUHAMMAD because of his Muslim faith in violation of NYSHRL. As a direct result of Defendants' discriminatory, unlawful, and illegal employment practices and conduct, MUHAMMAD has suffered embarrassment and the indignity of disparate treatment and discrimination.

62.    As a direct result of Defendants' discriminatory, unlawful, and illegal employment practices and conduct, MUHAMMAD has suffered emotional and mental anguish and distress, and loss of income and benefits.

63.    Defendants' violation of the law has resulted in significant and consequential damages in the past, present, and continuing into the future, including, but not limited to, back and front pay, compensatory damages, punitive damages, and costs in prosecuting the instant action.

64.    Defendants discriminated against MUHAMMAD because of Muslim religion in violation of NYSHRL.

65.    Defendants failed to address, or stop, the discrimination which

MUHAMMAD was subjected to by the management of the Five Points Correctional Facility.

66.     MUHAMMAD complained to Defendants about the discrimination he was subjected to during his employment.

67.     Defendants retaliated against Plaintiff because of his Muslim religion by suspending him from duty without pay and seeking termination in violation of NYSHRL.

68.     As a direct result of Defendants' retaliation, MUHAMMAD has suffered embarrassment and the indignity of disparate treatment and discrimination.

69.     As a direct result of Defendants' retaliation, MUHAMMAD has suffered emotional and mental anguish and distress, and loss of income and benefits.

70.     As a direct result of Defendants' retaliation, MUHAMMAD was unlawfully suspending him from duty without pay and seeking termination in violation of NYSHRL.

71.     Defendants' violation of the law has resulted in significant and consequential damages in the past, present, and continuing into the future, including, but not limited to, back and front pay, compensatory damages, punitive damages, and costs in prosecuting the instant action.

**WHEREFORE**, Plaintiff, RONALD MUHAMMAD, respectfully demands a declaration that the unlawful acts and practices of Defendants were in violation of the laws of the United States of America and State of New York, and that MUHAMMAD, a Muslim Chaplain be granted a judgment for all damages properly recoverable under the law, including, but not limited to, back pay, fringe benefits, front pay, compensatory damages, liquidated damages, punitive damages, interest, and costs in prosecuting this action, together with such other and further relief which to this Court may seem just and proper.

~ 16 ~

DATE: October 30, 2024
      Rochester, New York

                     Respectfully submitted,

                     FOR THE PLAINTIFF
                     RONALD MUHAMMAD:

                     By: *Ronald Muhmmad*
                     RONALD MUHAMMAD, Chaplin
                     817 Post Avenue
                     Rochester, New York 14619
                     Phone: (315) 575-627–0775
                     Email: ronald_muhammad@yahoo.com

## <u>CERTIFICATE OF SERVICE</u>

    I HEREBY CERTIFY that on the 30th day of October 2024, I did cause a true and correct copy of the foregoing THIRD AMENDED COMPLAINT and attachments to be filed with the Clerk of the Court and furnished by to the Defendant's counsel of record named below by electronic mail:

                     By: *Ronald Muhmmad*
                     RONALD MUHAMMAD, Chaplin

Letitia James
ATTORNEY GENERAL
Muditha Halliyadde
ASSISTANT ATTORNEY GENERAL
New York Office of the Attorney General
Rochester Regional Office
144 Exchange Boulevard, Suite 200
Rochester, NY 14614
Phone: (585) 327-3216
Email: muditha.halliyadde@ag.ny.gov

**Counsel for ANTHONY ANNUCCI, et al,**

# Exhibit B

**NEW YORK STATE** | **Department of Corrections and Community Supervision**

**KATHY HOCHUL**
Governor

**DANIEL F. MARTUSCELLO III**
Commissioner

## <u>NOTICE OF DISCIPLINE</u>

**TO:**      Ronald Muhammad, Chaplain
Five Points Correctional Facility

**DATE:**    October 15, 2024

In accordance with the Disciplinary Procedure, Article 33 of the Agreement between the State of New York and the Public Employees Federation for the Professional, Scientific and Technical Services Unit, you are hereby informed that we shall implement the following:

### DISMISSAL FROM SERVICE AND LOSS OF ANY ACCRUED ANNUAL LEAVE

The reason for this discipline is misconduct as follows:

1. On October 4, 2024, at approximately 4:00 p.m., while assigned to Five Points Correctional Facility you were found to have introduced and/or possessed contraband on facility grounds in violation of DOCCS Employees' Manual §2.2, §2.16, §2.23, §2.30, and/or DOCCS Directive #4936, *Search of DOCCS Employees, Attachment A, Staff Allowable Items*. Specifically, Lieutenants Jeffrey Rorick and John Wade retrieved approximately 267 unapproved copies of the "Final Call" newsletter that belong to you from desk drawers and filing cabinets in the Chaplain area.

2. On or sometime prior to October 4, 2024, while assigned to Five Points Correctional Facility you failed to follow proper protocol in violation of DOCCS Employees' Manual §2.2, §2.16, §2.23, §2.30, and/or DOCCS Directive #4936, *Search of DOCCS Employees, Attachment A, Staff Allowable Items*. Specifically, you failed to apply for gates passes and complete Form 3084, *Record of Donations – Volunteer Services* for 267 copies of the "Final Call" newsletter."

3. On October 11, 2024, at approximately 8:45 a.m., while on duty at Five Points Correctional Facility you failed to exercise respectful communication in the workplace, in violation of DOCCS Employees' Manual §2.2, §2.23, and §2.7. Specifically, when Officer Donna Kobbe advised you that she was going to conduct a frisk search you became defiant and stated in sum or substance that "as an employee I am not subject to frisk searches."

**Notice Of Discipline**                                                      **Page 2**
**Ronald Muhammad, Chaplain**
**Five Points Correctional Facility**                               **October 15, 2024**

4.  On October 11, 2024, at approximately 8:45 a.m., while on duty at Five Points Correctional Facility you were found to introduce and or possess contraband on facility grounds in violation of DOCCS Employees' Manual §2.2, §2.16, §2.23, §2.30, and/or DOCCS Directive #4936, *Search of DOCCS Employees, Attachment A, Staff Allowable Items*. Specifically, when Officer Donna Kobbe conducted a frisk search of your person you were found to be in possession of 2 unapproved copies of the "Final Call" newsletter.

5.  On October 11, 2024, at approximately 8:45 a.m., while on duty at Five Points Correctional Facility you failed to follow proper protocol in violation of DOCCS Employees' Manual §2.2, §2.16, §2.23, §2.30, and/or DOCCS Directive #4936, *Search of DOCCS Employees, Attachment A, Staff Allowable Items*. Specifically, you failed to apply for gates passes and complete Form 3084, *Record of Donations – Volunteer Services* for 2 copies of the "Final Call" newsletter."

In assessing this penalty, we note that the prohibition of possessing unauthorized contraband while on facility property is well known to all employees, and the prohibition is continuously reinforced through written communication including reminder signs posted at facility entrances. The Department notes that policy regarding contraband was established in the interest of the Facility safety and security. It should be mentioned that bringing in this unapproved newsletter has been an ongoing issue. You were counseled by Deputy Christina Hill on February 1, 2023, and your misconduct was mentioned in your Performance Evaluation for the time period of September 15, 2019 through September 14, 2020. Your actions are unprofessional and inconsistent with your duties as a New York State Chaplain and brings into question your continued employment with this Department.

As you are aware, you were suspended without pay effective October 11, 2024, pursuant to the Agreement between the State of New York and the Public Employees Federation.

If you wish to dispute the penalty, you may file a disciplinary grievance according to the provisions of the Disciplinary Procedure. In that event, we recommend that you read the procedure, which is Article 33 of the Professional, Scientific and Technical Services Unit Agreement (attached). Such a grievance must be filed with me postmarked no later than (14) fourteen calendar days from the receipt of this notice. If no such grievance is filed, the penalty will take effect at the close of the appeal period.

You are provided two (2) copies of this notice in order that one may be given to your representative. Your union representative is the Public Employees Federation.

**Notice Of Discipline**                                    **Page 3**
**Ronald Muhammad, Chaplain**
**Five Points Correctional Facility**                       **October 15, 2024**

Any further communication with you regarding this matter will be mailed to you at your address on record with Five Points Correctional Facility, which is **817 Post Ave., PO Box 926, Rochester, New York 14619**, unless you request in writing that it be mailed to a different address.

Matthew Bloomingdale
Director of Labor Relations

Attachment
MB/SG/NR

**Notice Of Discipline**
**Ronald Muhammad, Chaplain**
**Five Points Correctional Facility**

**Page 4**

**October 15, 2024**

## ATTACHMENT # 1

### Confiscated on October 4, 2024, Search of Office

**2019 - Total Issues = 1**
October 22, 2019 - Volume 39 #2 (1 issue)

**2020 - Total Issues = 5**
February 4, 2020 - Volume 39 #17 (1 issue)
March 3, 2020 - Volume 39 #21 (1 issue)
March 7, 2020 - Volume 39 #23 (1 issue)
March 24, 2020 - Volume 39 #24 (1 issue)
April 2, 2020 - Volume 39 #26 (1 issue)

**2022 - Total Issues = 74**
February 1, 2022 - Volume 41 #17 (8 issues)
March 22, 2022 - Volume 41 #24 (12 issues)
August 22, 2022 - Volume 41 #43 (2 issues)
September 12, 2023 - Volume 42 #48 (1 issue)
September 22, 2022 - Volume 41 #51 (11 issues)
October 25, 2022 - Volume 42 #3 (12 issues)
November 22, 2022 - Volume 42 #7 (14 issues)
November 29, 2022 - Volume 42 #8 (13 issues)
November 15, 2022 - Volume 42 #6 (1 issue)

**2023 - Total Issues = 74**
January 10, 2023 - Volume 42 #14 (2 issues)
January 21, 2023 - Volume 42 #17 (1 issue)
January 24, 2023 - Volume 42 #16 (5 issues)
April 25, 2023 - Volume 42 #29 (3 issues)
May 9, 2023 - Volume 42 #31 (14 issues)
May 16, 2023 - Volume 42 #32 (16 issues)
June 27, 2023 - Volume 42 #37 (3 issues)
September 5, 2023 - Volume 42 #47 (7 issues)
September 12, 2023 - Volume 42 #48 (4 issues)
October 10, 2023 - Volume 43, #1 (1 issue)
October 3, 2023 - Volume 42 #51 (1 issue)
November 7, 2023 - Volume 43 #5 (7 issues)
November 28, 2023 - Volume 43 #8 (2 issue)
December 5, 2023 - Volume 43 #9 (3 issues)
December 19, 2023 - Volume 43 #11 (5 issues)

**2024 - Total Issues = 98**
January 2, 2024 - Volume 43 #13 (10 issues)
January 9, 2024 - Volume 43 #14 (8 issues)
January 23, 2024 - Volume 43 #16 (5 issues)
February 13, 2024 - Volume 43 #19 (3 issues)
February 20, 2024 - Volume 43 #20 (5 issues)
March 12, 2024 - Volume 43 #23 (2 issues)
June 3, 2024 - Volume 42 #35 (9 issues)
June 17, 2024 - Volume 43 #37 (3 issue)
July 1, 2024 - Volume 43 #39 (15 issues)
July 22, 2024 - Volume 43 #42 (4 issues)
August 5, 2024 - Volume 43 #44 (3 issues)
August 19, 2024 - Volume 43 #46 (1 issue)
August 26, 2024, Volume 43 #47 (2 issue)
September 9, 2024 - Volume 43 #49 (11 issues)
September 16, 2024 - Volume 43 #50 (5 issue)
September 23, 2024 - Volume 43 #51 (12 issues)

**Miscellaneous Parts = 15**
October 2, 1988 Volume 7 #18
February 18, 2020
March 23, 2021
April 6, 2021
May 18, 2021
May 18, 2021
August 2, 2022
August 8, 2022
August 16, 2022
October 4, 2022
November 29, 2022
February 21, 2023
March 7, 2023
November 7, 2023
July 15, 2024

Revised 05/01 WDNY
## CERTIFCATE OF SERVICE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_Ronald Muhammad_

Plaintiff(s),

v.

_Anthony Annucci, et, al_

Defendant(s).

CERTIFICATE OF SERVICE

_22_-CV-_6025_

I, (print your name) _Ronald Muhammad_, served a copy of the attached papers
(state the name of your papers) _Third Amended Complaint_

upon all other parties in this case
by mailing [ _✗_ ]            by hand-delivering _11/5/24_ (check the method you
used)
these documents to the following persons (list the names and addresses of the people you
served) _Amy Cook_
_Nancy Fernundez_
_David Debejiun_

on (date service was made) _11/5/24_

I declare under penalty of perjury that the foregoing is true and correct, to the best of my
knowledge, information and belief.

Executed on _11/5/24_
        (date)                                (your signature)