UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RONALD MUHAMMAD,

                    Plaintiff,

     vs                                         DECLARATION
                                                   22-CV-6025

ANTHONY ANNUCCI, et. al.,

                    Defendants.

---

     **Patrick Domery**, pursuant to 28 U.S.C. §1746, declares under penalty of perjury under the laws of the United States of America that the foregoing is true and correct:

1. I am employed as an Associate Counsel for the New York State Department of Corrections and Community Supervision ("DOCCS").

2. I make this declaration to confirm the receipt of the attached Complaint and the two exhibits on July 7, 2025, and in support of DOCCS' motion to dismiss.

3. On July 7, 2025, the Complaint submitted hereto as Exhibit 1 was served upon the DOCCS together with Exhibits A and B. The served Exhibit A is identified as Notice of Discipline issue to Plaintiff on October 15, 2024, and the Exhibit B is identified as the Notice of Discipline and Award May 23, 2025.

Dated: July 14, 2025
Albany, New York

                              Patrick Domery
                              Associate Counsel
                              Department of Corrections and Community Supervision
                              1220 Washington Avenue
                              Albany, NY 12226
                              Patrcik.Domery@doccs.ny.gov

## CERTIFICATE OF SERVICE

I certify that on July 23, 2025, I electronically filed the foregoing Declaration on behalf of the State Defendants with the Clerk of the District Court using CM/ECF system, which sent notification of such filing to the following:

1.  N/A

And, I hereby certify that I have mailed, by the United States Postal Service, a copy of the document to the following non-CM/ECF participant(s):

1.    Ronald Muhammad
      817 Post Avenue
      Rochester, New York 14619

LETITIA JAMES
Attorney General for the State of New York
*Attorney for Defendants*

 s/*Muditha Halliyadde*
Muditha Halliyadde
Assistant Attorney General, of Counsel
NYS Office of the Attorney General
144 Exchange Boulevard, Suite 200
Rochester, New York 14614
Telephone: (585) 546-7430
Muditha.Halliyadde@ag.ny.gov

3

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

RONALD MUHAMMAD,

                  Plaintiff,                         **Case No: 22-CV-6025-FPG-MJP**

           vs.

                                              **Jury Trial Demanded**

NEW YORK STATE DEPARTMENT OF
CORRECTION AND COMMUNITY
SUPERVISION,

                  Defendant.

---

## <u>AMENDED COMPLAINT</u>

Plaintiff RONALD MUHAMMAD, Chaplain (hereinafter "MUHAMMAD" or "the Plaintiff"), in and for himself *pro se*, submits his AMENDED COMPLAINT, which shall supersede any prior operative complaint, pursuant to the Order of Hon. Merrdith A. Vacca, USDJ, dated June 6, 2025, at Doc. #111. Accordingly, MUHAMMAD pursues his remaining Title VII claim against the New York State Department of Corrections and Community Supervision, (hereinafter "the Defendant" or "DOCCS"), for unlawful employment retaliation in response to his protected activity of seeking judicial remedy opposing workplace discrimination by his employer DOCCS, in violation of federal and state laws. In support thereof, MUHAMMAD thus sayeth states the following:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of New York

*PMV*
*7/7/25*
*3127 PM*
*Doccs*

)
Ronald Muhammad )
_____ )
Plaintiff(s) )
v. )    Civil Action No.
)    22-CV-6025
)
New York State Department of )
_____ )
Defendant(s) )
Corrections and Supervision )

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

New York State Department of Corrections Supervision
1220 Washington Avenue
Albany, New York 12226

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date: **JUN 27 2025**    _____
Signature of Clerk or Deputy Clerk

## INTRODUCTION

1.    MUHAMMAD is an ordained Chaplain for the Nation of Islam and is employed by DOCCS. MUHAMMAD is one of several faith minister leaders of various religions that are employed by DOCCS to provide prison religious services to DOCCS inmates.

2.    MUHAMMAD asserts that he suffered disparate and adverse treatment by DOCCS in which they knowingly, intentionally, and arbitrarily preventing his access into his assigned workplace facility with his Nation of Islam religious materials and, on other occasions, limiting access to his religious materials for Muslim prison inmates. DOCCS did so contrary to similarly situated faith minister leaders of other religious faiths who were treated more favorably in direct violation of MUHAMMAD's Title VII Rights.

3.    When MUHAMMAD opposed the Defendant's unlawful discriminatory treatment of his Muslim faith by filing a federal lawsuit and sought discovery evidence, DOCCS unlawfully caused him to suffer the adverse consequences of employment retaliation by contemporaneously suspending him from duty without pay and sought the penalty of termination.

4.    DOCCS did so to discourage him from his protected activity in pursuing the instant judicial relief and to discourage witnesses from their protected activity in testifying in support of MUHAMMAD's discrimination claims.

~ 2 ~

**PARTIES**

5.      Plaintiff MUHAMMAD is an ordained Nation of Islam chaplain employed by DOCCS since 2005.  Defendant DOCCS is an agency of the State of New York that employs more than fifteen employees and is an "employer" under Title VII.

6.      Defendant NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION ("DOCCS"), is an agency of the State of New York and an employer within the meaning of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e(b).  DOCCS employs more than fifteen employees and is responsible for the employment and disciplinary actions alleged herein.  DOCCS is the sole proper Defendant in this action following the Court's June 6, 2025, Order at (ECF No. 111).

**JURISDICTION AND VENUE**

7.      This civil action is brought against DOCCS for their explicit violation of the ("Title VII of the Civil Rights Act of 1964"), which prohibits employment discrimination based on race, color, religion, sex, and national origin.  DOCCS's unlawful retaliation is within temporal proximity to MUHAMMAD's protected activity of the instant lawsuit in violation under Title VII, *as amended*, 42 U.S. Code § 2000e-2(a)(1)(2), Employment Practice; 42 U.S. Code § 2000e-3(a) Retaliation.  Subject-matter jurisdiction exists under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3). Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because all relevant events occurred at Five Points Correctional Facility in Romulus, New York.

8.      MUHAMMAD timely filed his charge of discrimination on March 2, 2021, with the New York State Division of Human Rights ("SDHR"), which was dual filed with the United States Equal Employment Opportunity Commission ("EEOC"), which covers retaliation.

9.      The SDHR issued a DETERMINATION AFTER INVESTIGATION on June 14, 2021, finding probable cause that the Defendants collectively engaged in discrimination against MUHAMMAD in violation of the New York State Human Rights laws.  MUHAMMAD subsequently complied with all precedent conditions for the instant action before the court and this civil rights cause is brought against Defendants within all applicable time limits as stated under New York State and Federal laws.

## STATEMENT OF FACTS

10.      On September 15, 2005, MUHAMMAD was hired by DOCCS to provide religious services for Muslim inmates and was initially assigned to the Clinton Correction Facility.

11.      In June of 2019, MUHAMMAD was assigned to the Five Points Correctional Facility where the gravamen of unlawful discrimination took place.  In the ensuing years, MUHAMMAD suffered disparate and adverse treatment on numerous occasions in comparison to similarly situated religious leader employees of other faiths, when he was prevented from bringing his "Final Call Newspaper," the official religious

~ 4 ~

publication of the Nation of Islam, into the Five Points Correctional Facility in his regular course of ministerial duties.

12.    On numerous occasions, MUHAMMAD contemporaneously observed that other similarly situated ministers were treated more favorably and did not experience the same disparate scrutiny and treatment of their religious materials for their religion.

13.    The Defendants denied that they engaged in disparate conduct and maintained that MUHAMMAD has a history of bypassing Facility Media Review ("FMR"), which is purportedly required for all publications coming into the facility. However, MUHAMMAD asserts that he attempted to have FMR approve his publications on several occasions, but his supervisor prevented him from doing so.

14.    Additionally, the Defendants engaged in this disparate practice without a contemporaneous written policy in forcing "Muslim inmates to require having a subscription to his Final Call newspaper material, if they wish to access to publication other than one copy that is kept in a locker for inmates to share." This discriminatory and arbitrary practice, standing alone, is a violation of MUHAMMAD's rights under Title VII.

15.    On several occasions, MUHAMMAD personally observed inmates who are either Christian or Jewish were permitted to have full unimpeded access to donated religious publications of their faith without having to share one copy maintained in a locker. At the same time, MUHAMMAD is not permitted to bring donated Final Call publications into the Five Points Correctional Facility for Muslim inmates.

~ 5 ~

16.    Although DOCCS understandably have a legitimate business purpose for promoting order and safety through their media review policy, however, DOCCS intentionally, knowingly, and arbitrarily enforced this policy adversely against Nation of Islam's Final Call publication and intentionally obstructed its access to Muslim inmates in comparison to religious publications and material of other religious faiths that is notably held to a different standard of less scrutiny and more favorable treatment.

17.    There are issues of material fact remaining, including but not limited to, DOCCS's disparate treatment of MUHAMMAD's Muslim faith and religious practice, treatment of his Nation of Islam religious publications, specifically, the Final Call Newspaper, DOCCS's disparate treatment of Final Call Newspapers concerning DOCCS's purported media review process.

18.    MUHAMMAD subsequently filed the instant federal lawsuit to oppose DOCCS's unlawful employment discrimination.  Subsequently, during the discovery process and mediation to obtain evidence, DOCCS suspended MUHAMMAD from duty without pay and sought the penalty of termination.  DOCCS unlawfully did so because of MUHAMMAD's protected activity in pursuing the instant litigation, opposing their arbitrary disparate conduct, and unlawfully discouraging employee witnesses from their protected activity in participating in this instant action before the court.

## ARGUMENT

19.    On August 8th, 2024, upon the order of the court, this matter was referred to the Magistrate Judge for various matters of discovery.

20.    On October 4, 2024, the court rendered orders regarding the discovery production of records and admissions. (Doc. No's. 72, 73.)

21.    Eleven days later, on or about October 15, 2024, the Defendant served MUHAMMAD their NOTICE OF DISCIPLINE ("NOD").  Pursuant to their NOD, MUHAMMAD was suspended from employment without pay and DOCCS is now seeking the penalty of termination.  See attached Defendant's NOD and its attachment.

22.    The Defendant's NOD alleges the following misconduct, which states the following:

DISMISSAL FROM SERVICE AND LOSS OF ANY ACCRUED ANNUAL LEAVE

23.    "The reason for this discipline is misconduct as follows:  On October 4, 2024, at approximately 4:00 p.m., while assigned to Five Points Correctional Facility you were found to have introduced and/or possessed contraband on facility grounds in violation of DOCCS Employees' Manual §2.2, §2.16, §2.23, §2.30, and/or DOCCS Directive #4936, Search of DOCCS Employees, Attachment A, Staff Allowable Items. Specifically, Lieutenants Jeffrey Rorick and John Wade retrieved approximately 267 unapproved copies of the "Final Call" newsletter that belong to you from desk drawers and filing cabinets in the Chaplain area.

~ 7 ~

24.    On or sometime prior to October 4, 2024, while assigned to Five Points Correctional Facility you failed to follow proper protocol in. violation of DOCCS Employees' Manual §2.2, §2.16, §2.23, §2.30, and/or DOCCS Directive #4936, Search of DOCCS Employees, Attachment A, Staff Allowable Items. Specifically, you failed to apply for gates passes and complete Form 3084, Record of Donations - Volunteer Services for 267 copies of the "Final Call" newsletter."

25.    On October 11, 2024, at approximately 8:45 a.m., while on duty at Five Points Correctional Facility you failed to exercise respectful communication in the workplace, in violation of DOCCS Employees' Manual §2.2, §2.23, and §2.7. Specifically, when Officer Donna Kobbe advised you that 'she was going to conduct a frisk search you became defiant and stated in sum or substance that as an employee I am not subject to frisk searches.'

26.    On October 11, 2024, at approximately 8:45 a.m., while on duty at Five Points Correctional Facility you were found to introduce and or possess contraband on facility grounds in violation of DOCCS Employees' Manual §2.2, §2.16, §2.23, §2.30, and/or DOCCS Directive #4936, Search of OOCCS Employees, Attachment A, Staff Allowable Items.  Specifically, when Officer Donna Kobbe conducted a frisk search of your person you were found to be in possession of two unapproved copies of the "Final Call" newsletter.

27.    On October 11, 2024, at approximately 8:45 a.m., while on duty at Five Points Correctional Facility you failed to follow proper protocol in violation of DOCCS Employees' Manual §2.2, §2.16, §2.23, §2.30, and/or DOCCS Directive #4936, Search of DOCCS Employees, Attachment A, Staff Allowable Items. Specifically, you failed to apply for gates passes and complete Form 3084, Record of Donations - Volunteer Services for 2 copies of the "Final Call" newsletter."

28.    Here, the Defendant's contrived baseless disciplinary charges against MUHAMMAD are undeniably analogous and related to his instant claims currently before this court in the discovery process. The unpaid suspension and threat of dismissal are the very type of actions the Supreme Court called "materially adverse." DOCCS's conduct was intended to dissuade a reasonable employee from engaging in protected activity." *Hicks v. Baines*, 593 F.3d at 164-66.

29.    MUHAMMAD avers that the DOCCS's temporal proximity to their NOD is solely intended to unlawfully discourage him from his protected activity in pursuing judicial a remedy and to prevent state employee witnesses from supporting his case. The DOCCS's delib rate retaliatory conduct violates his civil rights under 42 U.S.C. § 2000e, et seq., ("Title VII of the Civil Rights Act of 1964").

30.    MUHAMMAD avers that the Defendant's unbridled illicit conduct to suspend him from duty without pay and seek termination of his employment for charges currently before this court, standing alone, is substantial credible evidence of their animus

and intent to interfere with this court's judicial administration and to "dissuade a reasonable worker" as witnesses from supporting his employment discrimination cause of action. *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006); *NYS Division of Human Rights v. St. Elizabeth's Hospital*, (1991).

### AS AND FOR A FIRST CAUSE OF ACTION
**(Employment Retaliation under Title VII, 42 U.S.C. § 2000e-3(a))**

31.    Plaintiff repeats and realleges the allegations in paragraphs "1" through "30" of the Complaint as if fully stated herein.

32.    On or about October 15, 2024, the Defendants served MUHAMMAD their NOTICE OF DISCIPLINE ("NOD"). Pursuant to DOCCS's NOD, MUHAMMAD was suspended from employment without pay and DOCCS is now seeking the penalty of termination.

33.    The Defendant's baseless and gratuitous administrative charges against MUHAMMAD are undeniably analogous to his instant claims before this court and currently in the discovery process.

34.    The Defendant's gratuitous retaliation claims are intended to unlawfully discourage him from pursuing judicial relief and intimidate state employee witnesses from supporting his case and it is intended to interfere with the judicial progress of this court.

35.     The Defendant's deliberate unlawful retaliation violates MUHAMMAD's civil rights under 42 U.S.C. § 2000e-3(a) et. seq., and the ("Title VII of the Civil Rights Act of 1964").

36.     The Defendant's unambiguous temporal proximity of administrative charges during this court's discovery process is consistent with their history of ongoing pattern and practice of abject retaliation against those who choose to oppose their employment discrimination.

37.     The Defendant's unbridled illicit conduct to suspend him without pay and seek termination of his employment for administrative charges that are currently at issue before this court is, standing alone, substantial credible evidence of their animus and intent to interfere with this court judicial progress and intended to "dissuade a reasonable worker" to be witnesses in support of his employment discrimination cause of action. *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006); *NYS Division of Human Rights v. St. Elizabeth's Hospital* (1991).

38.     In the recent key retaliation and discrimination court case, *Muldrow v. City of St. Louis* (2024), the U.S. Supreme Court revised its standard for what constitutes an "adverse employment action" under Title VII of the Civil Rights Act. Previously, courts required that a claimant demonstrate a "material" or "significant" disadvantage to show adverse action, typically needing a change like reduced pay, benefits, or rank. However,

the Supreme Court clarified that plaintiffs now need to show only "some disadvantage" impacting the terms or conditions of employment, not necessarily a substantial one.

39.     This shift affects cases of alleged retaliation when employees are transferred or reassigned in ways that might affect their job satisfaction or responsibilities without significantly impacting pay or status.   This lower threshold broadens the types of employment changes that could support a discrimination or retaliation claim, potentially allowing minor changes, such as altered job duties or shift assignments, to proceed under Title VII if they are seen as disadvantageous.

40.     This decision marks a significant shift, making it easier for employees to bring forward cases when they experience less tangible but adverse changes in their work environment, even if their pay or title remains unaffected.   Accordingly, employers are now subject to more weighty scrutiny under the revised Title VII standard.

41.     As a direct result of Defendants' discriminatory, unlawful, and illegal employment practices and conduct, MUHAMMAD has suffered emotional and mental anguish and distress, and loss of income and benefits.

42.     DOCCS's violation of the law has resulted in significant and consequential damages in the past, present, and continuing, including, but not limited to, back and front pay, compensatory damages, punitive damages, and costs in prosecuting the instant action.

~ 12 ~

43.    DOCCS failed to address, or stop, the discrimination that MUHAMMAD was subjected to by the management of the Five Points Correctional Facility.

44.    MUHAMMAD complained to the Defendants about the discrimination he was subjected to during his employment, they failed to take official action, and retaliated against him because he sought discovery evidence in his lawsuit by suspending him from duty without pay and seeking termination in violation of state and federal laws.

45.    As a direct result of the Defendants' retaliation, MUHAMMAD has suffered embarrassment and the indignity of disparate treatment and discrimination, and has suffered emotional and mental anguish and distress, and loss of income and benefits.

46.    DOCCS's violation of the law has resulted in significant and consequential damages in the past, present, and continuing, including, but not limited to, back and front pay, compensatory damages, punitive damages, and costs in prosecuting the instant action.

47.    DOCCS subjected Plaintiff to a hostile work environment because of his religion, Nation of Islam, by knowingly and intentionally obstructing Plaintiff's ministerial duties, denying him the ability to provide Final Call publications, and subjecting him to disparate scrutiny not applied to similarly situated chaplains of other faiths.

48.    DOCCS's conduct was pervasive, severe, and objectively offensive, and was intended to harass, intimidate, and discourage Plaintiff from freely performing his

~ 13 ~

religious duties. The conduct altered the conditions of Plaintiff's employment and created an abusive work environment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

49.    As a direct result of the DOCCS's unlawful conduct, Plaintiff has suffered, and continues to suffer, loss of income, mental anguish, emotional distress, reputational harm, and other damages in an amount to be determined at trial.

50.    Plaintiff was treated less favorably than similarly situated employees of other religions. Specifically, Defendants permitted Christian and Jewish chaplains to introduce and distribute religious materials without undue scrutiny or restriction, while Plaintiff, a Nation of Islam Chaplain, was consistently denied equivalent access and support.

51.    DOCCS's discriminatory treatment was intentional, arbitrary, and lacked any legitimate non-discriminatory justification, and was based solely on Plaintiff's religious affiliation.

52.    DOCCS's actions constitute unlawful religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

53.    As a direct and proximate result of the DOCCS's discriminatory acts, Plaintiff has suffered and continues to suffer economic harm, emotional distress, humiliation, and other compensable damages.

54.    Plaintiff sincerely holds religious beliefs requiring the distribution and use of the Final Call newspaper during his ministerial duties. Defendants were aware of Plaintiff's religious requirements and nonetheless intentionally denied him a reasonable accommodation, while permitting other religious leaders to engage in similar practices.

55.    DOCCS did not demonstrate that accommodating Plaintiff's religious practice would have imposed an undue hardship on the operation of DOCCS.

56.    DOCCS's failure to accommodate Plaintiff's religious practice violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(j).

57.    As a direct result of this failure to accommodate, Plaintiff suffered and continues to suffer adverse employment consequences and other damages.

### AS AND FOR A SECOND CAUSE OF ACTION
**Retaliation Against Witnesses and Interference
with Judicial Process – Title VII**

Plaintiff repeats and realleges the allegations in paragraphs "1" through "57" of the Complaint as if fully stated herein.

58.    On or about October 15, 2024, the Defendants served MUHAMMAD their NOTICE OF DISCIPLINE ("NOD").  Pursuant to their NOD, MUHAMMAD was suspended from employment without pay and DOCCS is now seeking the penalty of termination.

~ 15 ~

59.     DOCCS's baseless and gratuitous administrative charges against MUHAMMAD are undeniably analogous to his instant claims before this court and currently in the discovery process.

60.     DOCCS's gratuitous retaliation claims are intended to unlawfully discourage him from pursuing judicial relief and intimidate state employee witnesses from supporting his case and it is intended to interfere with the judicial progress of this court. The Defendant's deliberate unlawful retaliation violates MUHAMMAD's civil rights under 42 U.S.C. § 2000e, et seq. ("Title VII of the Civil Rights Act of 1964"), as amended.

61.     DOCCS's unambiguous temporal proximity of administrative charges during this court's discovery process is consistent with their history of ongoing pattern and practice of abject retaliation against those who choose to oppose their employment discrimination.

62.     DOCCS's unbridled illicit conduct to suspend him without pay and seek termination of his employment for administrative charges that are currently at issue before this court is, standing alone, substantial credible evidence of their animus and intent to interfere with this court judicial progress and intended to "dissuade a reasonable worker" to be witnesses in support of his employment discrimination cause of action. *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006); *NYS Division of Human Rights v. St. Elizabeth's Hospital* (1991).

~ 16 ~

63.    In the recent key retaliation and discrimination court case, *Muldrow v. City of St. Louis* (2024), the U.S. Supreme Court revised its standard for what constitutes an "adverse employment action" under Title VII of the Civil Rights Act.  Previously, courts required that a claimant demonstrate a "material" or "significant" disadvantage to show adverse action, typically needing a change like reduced pay, benefits, or rank.  However, the Supreme Court clarified that plaintiffs now need to show only "some disadvantage" impacting the terms or conditions of employment, not necessarily a substantial one.

64.    This shift affects cases of alleged retaliation when employees are transferred or reassigned in ways that might affect their job satisfaction or responsibilities without significantly impacting pay or status.  This lower threshold broadens the types of employment changes that could support a discrimination or retaliation claim, potentially allowing minor changes, such as altered job duties or shift assignments, to proceed under Title VII if they are seen as disadvantageous.

65.    This decision marks a significant shift, making it easier for employees to bring forward cases when they experience less tangible but adverse changes in their work environment, even if their pay or title remains unaffected.  Accordingly, employers are now subject to more weighty scrutiny under the revised Title VII standard.

66.    As a direct result of Defendants' discriminatory, unlawful, and illegal employment practices and conduct, MUHAMMAD has suffered emotional and mental anguish and distress, and loss of income and benefits.

~ 17 ~

67. DOCCS's violation of the law has resulted in significant and consequential damages in the past, present, and continuing, including, but not limited to, back and front pay, compensatory damages, punitive damages, and costs in prosecuting the instant action.

68. DOCCS failed to address, or stop, the discrimination that MUHAMMAD was subjected to by the management of the Five Points Correctional Facility.

69. MUHAMMAD complained to the Defendants about the discrimination he was subjected to during his employment, they failed to take official action, and retaliated against him because he sought discovery evidence in his lawsuit by suspending him from duty without pay and seeking termination in violation of state and federal laws.

70. As a direct result of the Defendants' retaliation, MUHAMMAD has suffered embarrassment and the indignity of disparate treatment and discrimination and retaliation, MUHAMMAD has suffered emotional and mental anguish and distress, and loss of income and benefit..

71. DOCCS's violation of the law has resulted in significant and consequential damages in the past, present, and continuing, including, but not limited to, back and front pay, compensatory damages, punitive damages, and costs in prosecuting the instant action.

72. DOCCS subjected Plaintiff to a hostile work environment because of his religion, Nation of Islam, by knowingly and intentionally obstructing Plaintiff's

~ 18 ~

ministerial duties, denying him the ability to provide Final Call publications, and subjecting him to disparate scrutiny not applied to similarly situated chaplains of other faiths.

73.    DOCCS's conduct was pervasive, severe, and objectively offensive, and was intended to harass, intimidate, and discourage Plaintiff from freely performing his religious duties. The conduct altered the conditions of Plaintiff's employment and created an abusive work environment, in violation of Title VII of the Civil Rights Act of 1964; 42 U.S. Code § 2000e-2(a)(1)(2), Employment Practice.

74.    As a direct result of the Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, loss of income, mental anguish, emotional distress, reputational harm, and other damages in an amount to be determined at trial.

75.    Plaintiff was treated less favorably than similarly situated employees of other religions. Specifically, Defendants permitted Christian and Jewish chaplains to introduce and distribute religious materials without undue scrutiny or restriction, while Plaintiff, a Nation of Islam Chaplain, was consistently denied equivalent access and support.

76.    DOCCS's discriminatory treatment was intentional, arbitrary, and lacked any legitimate non-discriminatory justification, and was based solely on Plaintiff's religious affiliation, the Defendants' actions constitute unlawful religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

~ 19 ~

77.    As a direct and proximate result of the Defendants' discriminatory acts, Plaintiff has suffered and continues to suffer economic harm, emotional distress, humiliation, and other compensable damages.

78.    Plaintiff sincerely holds religious beliefs requiring the distribution and use of the Final Call newspaper during his ministerial duties. Defendants were aware of Plaintiff's religious requirements and nonetheless intentionally denied him a reasonable accommodation, while permitting other religious leaders to engage in similar practices.

79.    DOCCS did not demonstrate that accommodating Plaintiff's religious practice would have imposed an undue hardship on the operation of DOCCS and failure to accommodate Plaintiff's religious practice violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(j).    As a direct result of this failure to accommodate, Plaintiff suffered and continues to suffer adverse employment consequences and other damages.

80.    DOCCS's October 15, 2024, Notice of Discipline was not only aimed at Plaintiff but also at any employee who might testify on his behalf.  The NOD, circulated through Five Points Correctional Facility and read aloud at a staff meeting, warned that employees who transported "The Final Call" or cooperated with Plaintiff risked similar discipline.

81.    Such conduct qualifies as a materially adverse action because it would "dissuade a reasonable worker" from appearing as a witness in this case.  See *Burlington Northern*, 548 U.S. at 68.  Indeed, the Second Circuit recognizes that orchestrated

coworker harassment or threats intended to "frustrate the exercise of rights" under Title VII is actionable retaliation. See *Hicks v. Baines*, 593 F.3d 159, 170-71 (2d Cir. 2010)). Consequently, DOCCS's attempt to chill witness participation violates 42 U.S.C. § 2000e-3(a).

82.    Section 704(a) of Title VII makes it unlawful to "discriminate against any employee or applicant ... because he has opposed any practice made unlawful ... or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). The participation clause ("testified, assisted, or participated"), is interpreted broadly and protects employees who serve as witnesses—even if the underlying discrimination charge turns out to be meritless.

83.    Direct witnesses are those who give statements, affidavits, or deposition testimony, employees who merely agree to testify or supply documents, or third parties closely associated with the complaining employee if the employer's action is meant to punish the complainant by targeting an ally or loved one. *Thompson v. North Am. Stainless, LP*, 562 U.S. 170 (2011) (fiancée fired in retaliation is "aggrieved."

84.    MUHAMMAD's participation in this instant proceeding is protected activity and suffered DOCCS's materially adverse action of retaliatory discipline, an act that would dissuade a reasonable worker or witness from engaging in protected activity, causally connected in temporal proximity to his protected activity. *Burlington Northern & S.F. Ry. Co. v. White*, 548 U.S. 53 (2006) (defines "materially adverse").

85.    The glaring timing of DOCCS's sudden discipline for mirror-image" charges during discovery is classic evidence where the discipline recites the very conduct that is the subject of the lawsuit, courts find pretext.  The courts scrutinize employer conduct that deters coworkers from testifying as retaliation because it "interferes with enforcement of Title VII's basic guarantees."  *Hicks v. Baines*, 593 F.3d at 164-66 (purpose is to "frustrate the exercise of rights"); *Thompson*, 562 U.S. at 177-78.

86.    DOCCS not only retaliated against Plaintiff but also engaged in coercive behavior designed to dissuade potential state employee witnesses from participating in this litigation or providing truthful testimony.  Such conduct violates Title VII's anti-retaliation provisions, which extend protections to any employee who assists or participates in an investigation or proceeding under Title VII.

87.    DOCCS's conduct constitutes unlawful third-party retaliation and interference with protected activity, in violation of 42 U.S.C. § 2000e–3(a), as interpreted in *Thompson v. North Am. Stainless, LP*, 562 U.S. 170 (2011).

As a result, Plaintiff and supporting witnesses suffered chilling effects on their protected rights, undermining the integrity of the judicial process and causing further harm.

## CONCLUSION

WHEREFORE, in the context of Title VII of the Civil Rights Act of 1964, the State of New York and its agencies, such as DOCCS, are <u>not</u> immune from suit under the Eleventh Amendment for certain categories of relief.  Some types of damages and relief

may still be limited due to the state's sovereign immunity or federal statutory restrictions.

Title VII, as amended by the Civil Rights Act of 1991, authorizes compensatory damages,

including for emotional distress, against state employers.

1) Rescind the NOD and subsequent award of the Administrative Law Judge.

2) Bar DOCCS from disciplining any employee for cooperating in discovery.

3) Require DOCCS to issue a memorandum to staff reaffirming anti-retaliation protections.

4) A declaratory judgment that the Defendants violated Title VII and the New York State Human Rights Law.

5) Back pay, front pay, and lost benefits.

6) Compensatory damages for emotional distress, mental anguish, and humiliation, as permitted by Title VII.

7) Fees and costs of the Court proceeding pursuant to 42 U.S.C. § 2000e-5(k).

8) Grant such other and further relief as the Court deems just and proper.

DATE: June 20, 2025
     Rochester, New York

Respectfully submitted,

FOR THE PLAINTIFF
RONALD MUHAMMAD:

/s/: *Ronald Muhammad*
RONALD MUHAMMAD, Chaplain

~ 23 ~

817 Post Avenue
Rochester, New York 14619
Phone: (315) 575-0775
Email: ronald_muhammad@yahoo.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 20th day of June 2025, I did cause a true and correct copy of the foregoing superseding AMENDED COMPLAINT, to be filed with the Clerk of the Court and did furnish the same via electronic mail to the Defendant's counsel of record named below:

Letitia James
ATTORNEY GENERAL
Muditha Halliyadde
ASSISTANT ATTORNEY GENERAL
New York Office of the Attorney General
Rochester Regional Office
144 Exchange Boulevard, Suite 200
Rochester, NY 14614
Phone: (585) 327-3216
Email: muditha.halliyadde@ag.ny.gov

**Counsel for Defendant DOCCS.**

/s/  _Ronald Muhammad_____

RONALD MUHAMMAD, Chaplain

~ 24 ~

# Exhibit "A"

Notice of Discipline
October 15, 2024

**NEW YORK STATE**

**Department of Corrections and Community Supervision**

KATHY HOCHUL
Governor

DANIEL F. MARTUSCELLO III
Commissioner

## NOTICE OF DISCIPLINE

**TO:**   Ronald Muhammad, Chaplain
Five Points Correctional Facility

**DATE:**   October 15, 2024

In accordance with the Disciplinary Procedure, Article 33 of the Agreement between the State of New York and the Public Employees Federation for the Professional, Scientific and Technical Services Unit, you are hereby informed that we shall implement the following:

### DISMISSAL FROM SERVICE AND
### LOSS OF ANY ACCRUED ANNUAL LEAVE

The reason for this discipline is misconduct as follows:

1. On October 4, 2024, at approximately 4:00 p.m., while assigned to Five Points Correctional Facility you were found to have introduced and/or possessed contraband on facility grounds in violation of DOCCS Employees' Manual §2.2, §2.16, §2.23, §2.30, and/or DOCCS Directive #4936, *Search of DOCCS Employees, Attachment A, Staff Allowable Items*. Specifically, Lieutenants Jeffrey Rorick and John Wade retrieved approximately 267 unapproved copies of the "Final Call" newsletter that belong to you from desk drawers and filing cabinets in the Chaplain area.

2. On or sometime prior to October 4, 2024, while assigned to Five Points Correctional Facility you failed to follow proper protocol in violation of DOCCS Employees' Manual §2.2, §2.16, §2.23, §2.30, and/or DOCCS Directive #4936, *Search of DOCCS Employees, Attachment A, Staff Allowable Items*. Specifically, you failed to apply for gates passes and complete Form 3084, *Record of Donations – Volunteer Services* for 267 copies of the "Final Call" newsletter."

3. On October 11, 2024, at approximately 8:45 a.m., while on duty at Five Points Correctional Facility you failed to exercise respectful communication in the workplace, in violation of DOCCS Employees' Manual §2.2, §2.23, and §2.7. Specifically, when Officer Donna Kobbe advised you that she was going to conduct a frisk search you became defiant and stated in sum or substance that "as an employee I am not subject to frisk searches."

Notice Of Discipline                                        Page 2
Ronald Muhammad, Chaplain
Five Points Correctional Facility                          October 15, 2024

4.  On October 11, 2024, at approximately 8:45 a.m., while on duty at Five Points
    Correctional Facility you were found to introduce and or possess contraband
    on facility grounds in violation of DOCCS Employees' Manual §2.2, §2.16,
    §2.23, §2.30, and/or DOCCS Directive #4936, *Search of DOCCS Employees,
    Attachment A, Staff Allowable Items*. Specifically, when Officer Donna Kobbe
    conducted a frisk search of your person you were found to be in possession of
    2 unapproved copies of the "Final Call" newsletter.

5.  On October 11, 2024, at approximately 8:45 a.m., while on duty at Five Points
    Correctional Facility you failed to follow proper protocol in violation of DOCCS
    Employees' Manual §2.2, §2.16, §2.23, §2.30, and/or DOCCS Directive #4936,
    *Search of DOCCS Employees, Attachment A, Staff Allowable Items*.
    Specifically, you failed to apply for gates passes and complete Form 3084,
    *Record of Donations – Volunteer Services* for 2 copies of the "Final Call"
    newsletter."

In assessing this penalty, we note that the prohibition of possessing unauthorized contraband
while on facility property is well known to all employees, and the prohibition is continuously
reinforced through written communication including reminder signs posted at facility entrances.
The Department notes that policy regarding contraband was established in the interest of the
Facility safety and security. It should be mentioned that bringing in this unapproved newsletter
has been an ongoing issue. You were counseled by Deputy Christina Hill on February 1, 2023,
and your misconduct was mentioned in your Performance Evaluation for the time period of
September 15, 2019 through September 14, 2020. Your actions are unprofessional and
inconsistent with your duties as a New York State Chaplain and brings into question your
continued employment with this Department.

As you are aware, you were suspended without pay effective October 11, 2024, pursuant to the
Agreement between the State of New York and the Public Employees Federation.

If you wish to dispute the penalty, you may file a disciplinary grievance according to the
provisions of the Disciplinary Procedure. In that event, we recommend that you read the
procedure, which is Article 33 of the Professional, Scientific and Technical Services Unit
Agreement (attached). Such a grievance must be filed with me postmarked no later than (14)
fourteen calendar days from the receipt of this notice. If no such grievance is filed, the penalty
will take effect at the close of the appeal period.

You are provided two (2) copies of this notice in order that one may be given to your
representative. Your union representative is the Public Employees Federation.

**Notice Of Discipline**                                                        **Page 3**
**Ronald Muhammad, Chaplain**
**Five Points Correctional Facility**                              **October 15, 2024**

Any further communication with you regarding this matter will be mailed to you at your address on record with Five Points Correctional Facility, which is **817 Post Ave., PO Box 926, Rochester, New York 14619**, unless you request in writing that it be mailed to a different address.

Matthew Bloomingdale
Director of Labor Relations

Attachment
MB/SG/NR

Notice Of Discipline                                    **Page 4**
Ronald Muhammad, Chaplain
Five Points Correctional Facility                  **October 15, 2024**

## ATTACHMENT # 1

**Confiscated on October 4, 2024, Search of Office**

**2019 - Total Issues = 1**
October 22, 2019 - Volume 39 #2 (1 issue)

**2020 - Total Issues = 5**
February 4, 2020 - Volume 39 #17 (1 issue)
March 3, 2020 - Volume 39 #21 (1 issue)
March 7, 2020 -Volume 39 #23 (1 issue)
March 24, 2020 - Volume 39 #24 (1 issue)
April 2, 2020 - Volume 39 #26 (1 issue)

**2022 - Total Issues = 74**
February 1, 2022 - Volume 41 #17 (8 issues)
March 22, 2022- Volume 41 #24 (12 issues)
August 22, 2022 - Volume 41 #43 (2 issues)
September 12, 2023 -Volume 42 #48 (1 issue)
September 22, 2022 - Volume 41 #51 (11 issue)
October 25, 2022 - Volume 42 #3 (12 issues)
November 22, 2022 - Volume 42 #7 (14 issues)
November 29, 2022 - Volume 42 #8 (13 issues)
November 15, 2022 - Volume 42 #6 (1 issue)

**2023 - Total Issues = 74**
January 10, 2023 - Volume 42 #14 (2 issues)
January 21, 2023 - Volume 42 #17 (1 issue)
January 24, 2023 - Volume 42 #16 (1 issue)
April 25, 2023 - Volume 42 #29 (3 issues)
May 9, 2023 - Volume 42 #31 (14 issues)
May 16, 2023- Volume 42 #32 (16 issues)
June 27, 2023 - Volume 42 #37 (3 issues)
September 5, 2023 -Volume 42 #47 (7 issues)
September 12, 2023 - Volume 42 #48 (4 issues)
October 10, 2023-Volume 43, #1 (1 issue)
October 3, 2023 - Volume 42 #51 (1 issue)
November 7, 2023- Volume 43 #5 (7 issues)
November 28, 2023 - Volume 43 #8 (2 issue)
December 5, 2023- Volume 43 #9 (3 issues)
December 19, 2023 - Volume 43 #11 (5 issues)

**2024 - Total Issues = 98**
January 2, 2024 - Volume 43 #13 (10 issues)
January 9, 2024 - Volume 43 #14 (8 issues)
January 23, 2024 - Volume 43 #16 (5 issues)
February 13, 2024 - Volume 43 #19 (3 issues)
February 20, 2024 - Volume 43 #20 (5 issues)
March 12, 2024 - Volume 43 #23 (2 issues)
June 3, 2024 - Volume 42 #35 (9 issues)
June 17, 2024- Volume 43 #37 (3 issue)
July 1, 2024 - Volume 43 #39 (15 issues)
July 22, 2024 - Volume 43 #42 (4 issues)
August 5, 2024 - Volume 43 #44 (3 issues)
August 19, 2024-Volume 43 #46 (1 issue)
August 26, 2024, Volume 43 #47 (2 issue)
September 9, 2024 - Volume 43 #49 (11 issues)
September 16, 2024 - Volume 43 #50 (5 issue)
September 23, 2024 -Volume 43 #51 (12 issues)

**Miscellaneous Parts = 15**
October 2, 1988 Volume 7 #18
February 18, 2020
March 23, 2021
April 6, 2021
May 18, 2021
May 18, 2021
August 2, 2022
August 8, 2022
August 16, 2022
October 4, 2022
November 29, 2022
February 21, 2023
March 7, 2023
November 7, 2023
July 15, 2024

# Exhibit "B"

NOD Opinion and Award
May 23, 2025



**New York State**
**PUBLIC EMPLOYEES**
**FEDERATION, AFL-CIO**

1168-70 Troy-Schenectady Road
P.O. Box 12414
Albany, New York 12212-2414

(518) 785-1900 ext. 241 | (800) 342-4306 ext. 241

*Office of General Counsel*
Edward J. Greene, Jr,
*General Counsel*
John D. Svare
*Deputy General Counsel*
Alison M. Thorne
*Assistant General Counsel*

Kimberly A. Livingstone
David J. Friedman
Alexander R. Thoma
Jenifer M. Wharton
Andrienne C. Cloran
Heather L. Pollock
Bevlynn J. Sledge
*Associate Counsel*

May 23, 2025

Ronald Muhammad
817 Post Avenue
Rochester, NY 14619

Re:  *DOCCS (Five Points C.F.) v. Muhammad, Ronald*
     AAA Case No. 01-24-0008-3040
     Our File No. 11746-DA

Dear Chaplain Muhammad:

    Enclosed please find a copy of the decision by Arbitrator Jeffrey R. Cassidy dated May 23, 2025, which our office received regarding your Notice of Discipline dated October 15, 2024. As you can see, Arbitrator Cassidy found that the proposed penalty of dismissal from State service and loss of any accrued leave is not appropriate. The penalty shall be a 10-day suspension without pay.

    If you have any questions or concerns, feel free to contact me.

               Very truly yours,

               EDWARD J. GREENE, JR., ESQ.

By:  *Jenifer M. Wharton*
               Jenifer M. Wharton, Esq.
               Of Counsel

JMW/scm
Enclosure

AMERICAN ARBITRATION ASSOCIATION

------------------------------------------------------------------x

In the Matter of the Arbitration between       :

PUBLIC EMPLOYEES' FEDERATION, AFL-CIO  :
(RONALD MUHAMMAD),                  :

                          Grievant,    :

                   :  OPINION AND
        and                :  AWARD
                   :  AAA 01-24-0008-3040

NEW YORK STATE DEPARTMENT OF      :
CORRECTIONS AND COMMUNITY  SUPERVISION  :
(FIVE POINTS CORRECTIONAL FACILITY),   :

                      Employer.  :

------------------------------------------------------------------x

Before:  Jeffrey R. Cassidy, Hearing Officer

Hearing: April 8, 2025.

## APPEARANCES

*Edward J. Greene, Jr. General Counsel, Professional Employees Federation, Jennifer Wharton, of Counsel*, Albany, N.Y., for the grievant.

*Nicole Richmond, Human Resources Specialist 2, Shell Gosztyla, Human Relations Specialist, Labor Relations, New York State Department of Corrections and Community Supervision*, Albany, N.Y., for the employer.

## ISSUES

Is the grievant, Ronald Muhammad, guilty of the charges in the Notice of Discipline (NOD) dated October 15, 2024, and was there just cause for the issuance of the NOD?

If the grievant is found guilty is the proposed penalty of dismissal from State service and loss of any accrued leave appropriate?

If the proposed penalty is not appropriate, what shall the penalty be?

Does the Arbitrator have jurisdiction over the grievant's suspension, and if so, was it in accordance with Article 33 of the Agreement between New York State and the Public Employees Federation, AFL-CIO?

## BACKGROUND

The grievant, Ronald Muhammad, works as a chaplain at various New York State prisons, including two days a week at Five Points Correctional Facility (Five Points), a maximum-security prison in Romulus, New York. He has worked for the New York State Department of Corrections and Community Supervision (DOCCS) as a chaplain since 2005 and since 2019 he works two days a week at Five Points. Chaplain Muhammad provides religious services and counseling to incarcerated individuals, most of whom are of the Islamic faith.

On October 15, 2024, DOCCS Director of Labor Relations, Matthew Bloomingdale, issued a NOD to Chaplain Muhammad alleging that on October 4, 2024, he had introduced and/or possessed within Five Points approximately 267 copies of the newspaper The Final Call, the official newspaper of the Nation of Islam. The NOD characterizes the publication as contraband and claims that Chaplain Muhammad's introduction of it into Five Points and his possession of copies of it violated a DOCCS' Directive (4936), "Search of DOCCS Employees, Attachment A, Staff Allowable Items."

DOCCS also charged Chaplain Muhammad with "sometime prior to October 4, 2024," failing to follow procedures outlined Directive 4936 in bringing written material into Five Points. The NOD asserts that Chaplain Muhammad failed to apply for gate passes and failed to complete Form 3084, "Record of Donations – Volunteer Services," and that his alleged misconduct violated certain sections of the Employees Manual (§§§§ 2.2, 2.15, 2.23, and 2.30).

In addition, DOCCS charged Chaplain Muhammad with on October 11, 2024, violating the Employees' Manual (§§§ 2.2, 2.23, 2.7) by being defiant and disrespectful to Corrections Officer (CO) Donna Kobbe when she conducted a frisk

2

search of him. DOCCS also claimed that when CO Kobbe searched Chaplain Muhammad he had attempted to introduce into Five Points two unapproved copies of The Final Call without following the Employees' Manual, Directive 4936, and completing Form 3084.

DOCCS suspended Chaplain Muhammad without pay on October 11, 2024, and it seeks his termination and loss of any accrued annual leave. The Professional Employees Federation (PEF) filed a Demand for Arbitration dated October 15, 2024, and on November 6, 2024, the undersigned was notified of his selection as Arbitrator.

## FACTS

DOCCS maintains a policy defining contraband and restricting employees from bringing it into, or possessing it in, a correctional facility. (Directive 4936). Any individual who "knowingly and unlawfully" introduces or possesses contraband in a detention facility also violates New York Penal Law §205.25. Directive 4936 and DOCCS Employees' Manual (§2.30) provide that all employees in a correctional facility or while on duty who brings packages or material into a facility are subject to being searched. Employee work areas, including desks, storage cabinets and lockers are subject to quarterly searches for contraband.

Employees are required to carry items into a correctional facility in a clear bag which is subject to inspection. DOCCS policy includes a list of allowable staff personal items and those not on the list may be approved by the facility Superintendent and once approval is granted a "gate pass" for inspection is issued. Printed material such a magazines and newspapers are not on the approved list and are subject to the approval process.

The first step in obtaining permission to bring into a facility, or possessing, an item not on the list of allowable items is the completion of the "Record of Donations – Volunteer Services" form (3084). The form, which is typically used for

outside donations, is also used for bringing into a correctional facility any item not on the approved list. The form requires a detailed description of the item and its estimated value. For publications, the name, volume, number of pages, and edition must be included on the form.

At Five Points the completed form is reviewed by Deputy Superintendent for Program Services, Cristina Hill, and upon her approval it is forwarded to the Deputy Superintendent for Security. The form is dated and sent to the front gate where a "gate pass" is issued showing that the item has been approved and on what date it can be brought into the facility.

Once a newspaper, such as The Final Call, is approved it must also go through a media review committee which analyses the publication and makes a judgment on its content. It is scrutinized to ensure that its content, including photos or images, is not objectionable. Objectional parts can be redacted but if there are more than 8 pages of such material the entire publication is rejected, and the item is either destroyed on taken out of the facility.

On October 3, 2024, two Five Point lieutenants did a routine contraband search of Chaplain Muhammad's work area, the religious service office. The officers found numerous copies of The Final Call and brought them to Deputy Superintendent Hill who went through the gate passes and the record of donation forms to see if they had been approved. She found that there were 253 issues and 15 "miscellaneous parts" of The Final Call, from 2019 through 2024, that had not been approved. She then wrote a memo to Five Points Superintendent Reginald Bishop stating that 298 copies of Final Call were found in Chaplain Muhammad's work area, 31 of which had been approved.

Deputy Superintendent Hill also remarked that in the past Chaplain Muhammad had followed the approval procedure for bringing in The Final Call but the last time he had done so was in March 2023 and there were 152 dated between April 25, 2023, to September 16, 2024, that were brought into Five Points "as

contraband" without approval.  She also noted that Chaplain Muhammad's 2019-2020 performance evaluation addressed his need to follow the approval process for The Final Call. That evaluation stated:

> Chaplain Muhammed has been given a Formal Counseling for bringing in and making copies of the Final Call newspaper after previously being given direction by DSP Titus not to bring it in.  On 9/2/20, Chaplain Muhammad sent an email to DSS Woodward stating he does not bring them into Five Points, which was keeping with his previous direction by DSP Titus. . . . He admitted that he knew he was not all wed to bring in the publication and proceeded to do so anyway.

In addition, in January 2023, Deputy Superintendent Hill emailed Chaplain Muhammad informing him that she had received a copy of The Final Call in her mail and that no gate pass had been submitted for it. She reminded him that a gate pass had to be submitted so that it could be looked at by Media Review, and that this had been explained to him numerous times.  He responded that she had his personal copy, that he did not bring multiple copies of it into the facility, and that he had followed the same procedure many times with her approval.  Deputy Superintendent Hill answered that he done so with multiple copies, but he had to have a gate pass for his personal copy as well as for multiple copies.  Chaplain Muhammad responded that in his years with DOCCS he had never heard that, that only Five Points required this procedure, but that he was going to follow the policy she outlined. He ended with, "I need a gate order to read my own religious material for my sermon. Wow thank you."

On October 8, 2024, Deputy Superintendent Hill emailed Chaplain Muhammad informing him that she needed an explanation why there were the unapproved copies of The Final Call newsletter in his office. He responded, "Forgot it slipped my mind.  I apologize. It won't happen again."

On October 11, 2024, Chaplain Muhammad when entering Five Points was met by CO Donna Kobbe who was acting as lobby officer.  When CO Kobbe attempted to search him, he told her that he was an employee and he was not

subject to searches. She found in his clear plastic bag two copies of The Final Call and there were no gate pass for them. He took the copies outside the facility to his car, but according to CO Kobbe, he gave her "major attitude," and he was defiant.

Chaplain Muhammad explained that The Final Call is published out of Chicago, was founded by and contains lead articles from Minister Louis Farrakhan and is the official newspaper of the Nation of Islam. He uses it in his work as Chaplain at Five Points and other State correctional facilities and he understands the procedure for approval of bringing the newspaper into Five Points. He added that copies of it have always been approved.

When CO Kobbe searched Chaplain Muhammad and his bag and found copies of The Final Call she told him that the newspapers were not on a gate order, but he insisted that he was taking them back to "the" desk and that this was the routine he had followed for the past few years. He told her that he takes The Final Call editions with a donation receipt to the desk for Media Review. When she told him he needed a gate receipt he told her that he was trying to get to Media Review to get a gate pass and once he had gotten it he would be able to bring in another 24 copies of the same edition.

Chaplain Muhammad maintained that he was not defiant, nor uncooperative, when CO Kobbe told him he and his bag had to be searched. He added that despite his understanding of the approval process for carrying Final Call into Five Points, Deputy Superintendent Hill and Superintendent Bishop told him that he was going to be served with a NOD because he was a threat to the security of the facility because he was attempting to bring in contraband into the facility. He responded that he was not trying to sneak anything in, that the newspapers were in a clear plastic bag, and that he was bringing them in for approval for the following week's service. And he insisted that the process for bringing newspapers into Five Points from 2019-2023 did not require a donations receipt, only a gate pass, which he said

6

that he always had, but conceded that after 2023 the process included first getting a donation receipt.

POSITIONS OF THE PARTIES

DOCCS Arguments

DOCCS argues that the evidence shows that approximately 267 unapproved copies of Final Call were found in Chaplain Muhammad's work area, all but 31 of which were not approved.  Chaplain Muhammad was aware of the process for approval  f entering those newspapers into Five Points: completing and obtaining a record of donation slip, obtaining a gate pass, and processing the publication through Media Review, which he did not follow.

Further DOCCS contends that the evidence shows that when CO Kobbe attempted to search him and his bag on October 11, 2024, he became defiant, had a "major attitude," and said that as an "employee [he] was not subject to frisk searches."  He attempted to bring into Five Points, without following procedure and obtaining a record of donations and gate pass, two copies of Final Call.  And after Deputy Superintendent Hill emailed him on October 8, 2024, about the newspapers that were confiscated in his office on October 3, 2024, he apologized. However, 3 days later, on October 11, he attempted to carry into the Five Points the two unapproved copies.

Ruther,  his 2020-21 performance evaluation included a counseling memo addressing this issue as well as Deputy Superintendent Hill's January 31, 2023 email to him..  Yet three days later he again attempted to enter Five Point with unauthorized copies of The Final Call.

DOCCS stresses that Chaplain Muhammad has a proven record of disregarding DOCCS rules, rules that are intended to maintain security for its facility, incarcerated individuals and staff.  His disregard of the three-step approval

7

policy for media-related items cannot be tolerated and is such an egregious offense that his termination is justified.

DOCCS further maintains that PEF's argument DOCCS has discriminated against Chaplain Muhammad because of Nation of Islam religious beliefs is belied by the fact that DOCCS has never barred The Final Call from its facilities. Rather, it seeks only to enforce its approval process, a process that Chaplain Muhammad knew and flaunted. Moreover, PEF's assertion of discrimination is merely that and it has not offered any evidence to support its accusation.

The State/PEF collective bargaining agreement prohibits discipline for acts, other than those that would constitute a crime, that occurred more than one year prior to a NOD. PEF contends that any allegations that Chaplain Muhammad brought into Five Points, or had possession of any copies of, The Final Call prior to one year before the NOD, or before October 15, 2023, are time barred. DOCCS however responds that the publication date of the disputed newspapers is irrelevant as they remained in his possession within the one-year time frame, and each day that he possessed them constituted a timely incident of misconduct.

DOCCS also addresses the issue of whether it was entitled to suspend Chaplain Muhammad where the CBA permits suspensions only if an employee's continued on-the-job presence would be a potential danger to others or to property or would severely restrict DOCCS' operations. It contends that Chaplain Muhammad has shown a persistent pattern of insubordination by refusing to follow procedures to introduce, and or maintain, potential contraband into Five Points and that only by suspending (and terminating) him can it be assured that he would not persist in creating a potential danger to others or to Five Points.

PEF Arguments

PEF first raises a procedural question - does the NOD lack the specificity required by the CBA. Article 33.5(a) requires an NOD to provide "a description of

8

the alleged acts and conduct, including reference to dates, times and places." The NOD alleges that "on or sometime prior to October 4, 2024 . . ." Chaplain Muhammad failed to apply for gate passes and complete the record of donation form for the newspapers found in his office. PEF maintains that Article 33.5(a) has been strictly enforced and it relies on prior arbitration decisions between the State and PEF for disciplinary charges that have been dismissed for DOCCS failing to provide the required specificity. Without providing the dates upon which Chaplain Muhammad is alleged to have carried various editions or copies of The Final Call into Five Points, PEF contends that he has been forced to speculate when DOCCS believes he violated procedures for bringing them in. Moreover, says PEF, the burden is not on the grievant to request specification of the NOD[1], nor is it sufficient that the grievant may be able to estimate or surmise specifications of the charges.[2] And, awareness of the grievant of the at-issue specifications does not vitiate the State's responsibility to provide them in the NOD[3], and NOD amendments to include the required specifications are insufficient to overcome the contractual bar to amendments after the issuance of an agency level response.[4]

PEF also argues that Article 33.5 (f)(7)(h) of the CBA limits charges to a one-year look-back period unless the conduct constitutes a crime. As there is no crime alleged, DOCCS cannot impose discipline that it has not identified and if identified exceed the one-year limit.

On the merits, PEF maintains that DOCCS has the burden of proof to show by a preponderance of the evidence that Chaplain Muhammad is guilty of the charges specified in the NOD. It has failed in that burden, says PEF, because it has not shown whether each time he brought The Final Call into Five Points, times it

---

[1] *See,* PEF and OMH, Arbitrator Jonas Aarons, 1993.
[2] *See,* PEF and DOT, Arbitrator Stuart Pohl, 2009.
[3] *See,* PEF and DHR, Arbitrator Fred Denson, 2007.
[4] *See,* PEF and OMH, Arbitrator Lewandowski, 1996; PEF and OMH, Arbitrator Robert Simmelkjaer, 2017.

has not identified, if he had permission to do so. And it points out that DOCCS apparently did not monitor Chaplain Muhammad bringing the newspapers into the Five Points though it now claims they could have been contraband. Despite DOCCS' claim that Chaplain Muhammad consistently failed to obtain gate passes for hundreds of The Final Call, and that it had been called to his attention in his 2019-20 performance evaluation and DOCCS's emails in 2023, over 5 years it never searched his work area to discover the copies he had been maintaining. Nor, PEF stresses, is there any evidence that Chaplain Muhammed hid the hundreds of The Final Call that he had accumulated.

PEF points out that Media Review, which approves publications brought into the facility, never denied The Final Call, nor any articles in it. There is no evidence that the newspapers were judged to be contraband, or that distribution or reliance on them with incarcerated individuals would have created a dangerous environment within the facility. Further, the newspapers were returned to Chaplain Muhammad for him to keep or for him to throw out.

PEF also argues that the directive to Chaplain Muhammad to obtain a gate pass and complete a voluntary donation form for The Final Call did not occur until February 2023,[5] and there is no evidence that it existed before that date. And, according to PEF, as DOCCS has not shown when individual newspapers were brought in, there is no way to show whether they were brought into Five Points through one trip, a few, or many.

Moving to the issue of October 11, 2024, Chaplain Muhammad had two copies of The Final Calls with him when he attempted to enter Five Points. He did not have gate passes nor donation forms but PEF suggests that the absence of those forms were mere error, with no intention to sneak the newspapers into the facility.

---

[5] Deputy Superintendent Hill's email to Chaplain Muhammad reminding him that a gate pass had to be submitted for The Final Call and that it was subject to media review is dated January 31, 2023. His response is dated February 1, 2023.

They were in the mandated clear bag, easily discoverable.   The interchange he had with CO Koppe did not include any threats, extended arguments, nor did Chaplain Muhammad escalate the argument he may have had with her.

PEF emphasizes that Chaplain Muhammad is a long-term employee with a "solid" work record and that DOCCS' desire to terminate him is excessive and is contrary to the progressive discipline procedures incorporated into the CBA's just cause standard.   PEF points out that any discipline, if warranted, must consider the way Five Points dealt with this matter; that no harm was caused by Chaplain Muhammad's conduct; and, that State/PEF panel arbitrators have found penalties short of discharge for far more egregious misconduct.   His behavior with CO Kobbe was not violent, not threatening, and was only a stern but quickly retracted inquiry as to why he needed to be searched.

Moreover, the newspapers he attempted to bring into the facility and those found in his office, were not dangerous, not incendiary, and are the type of publications that Five Points historically had allowed into its facility.   Finally, PEF stresses that despite DOCCS' argument that Chaplain Muhammad has shown a pattern of bringing in, or attempting to bring in, potential contraband, all that exists is a notation in a performance evaluation that focused more on his photocopying of The Final Call, and a February 2023 email setting forth a procedure for bringing in the newspaper because a copy happened to be mailed to DOCCS. Then years went by where The Final Call accumulated in his office, without prior investigation, until October 2024.   The failure of DOCCS to investigate for many years the accumulation of The Final Call in his office demonstrates that issues that DOCCS has now raised in its charges shows that any misconduct was, historically, not judged to be serious. Thus, says PEF, if any penalty is justified it should not be severe.

DOCCS was entitled to suspend Chaplain Muhammad if he was a danger to himself or others or his presence would severely interfere with Five Points

11

operation. PEF and the State have an expedited suspension review policy providing for a "triage" arbitrator to make a probable cause determination of whether the contractual standard for a suspension has been met (with the exception for certain types of disciplinary charges). The "triage" arbitrator is to accept as true the contents of the NOD and is limited to a review of whether the reasons for the suspension meet the contractual criteria. If the arbitrator determines that probable cause for the suspension has not been met the employee is restored to the payroll with back pay and leave credits if taken.

The "triage" arbitrator reviewed the reasons for Chaplain Muhammad's suspension and determined that there was no probable cause for his suspension. Chaplain Muhammad was restored to the payroll. PEF argues that disciplinary arbitrators under the CBA do not have authority to review the triage arbitrator's finding that a suspension is invalid. It stresses that triage determinations that *sustain* suspensions are subject to arbitral review in the subsequent disciplinary proceedings but determinations finding no probable cause for suspension are not. PEF points to the following provision in the triage agreement in support of its position.

> In cases where the "triage" arbitrator determines that there was probable cause for the suspension, nothing herein shall restrict the disciplinary arbitrator from determining at the conclusion of the case and after all evidence has been considered, whether there was probable cause for the suspension.[6]

Thus, according to PEF, in cases where there is a finding of no probable cause that is the end of the matter. However, if there was a finding of probable cause, the employee remains suspended, but the "triage" arbitrator's finding can be placed before the disciplinary arbitrator.

---

[6] Memorandum of Agreement between the Public Employees Federation, AFL-CIO (PEF) and the State of New York (State) Concerning a Pilot Program for Virtual 33 Interrogations, Meetings and Hearings and for Expedited Probable Cause Review Under Article 33 of the PEF/State Agreement, Section I(8)

DISCUSSION

Five Points policy requires any employee upon entering the facility to be subject to search for contraband and those items not on a list of approved items require a gate pass. Apparently after 2023 a record of donation form had to be filed out which more precisely identifies the item or items intended to pass through Five Points' entry gate. Publications such as The Final Call are not on the list of allowable items and are required to be submitted through the approval process. In addition to the gate pass and the record of donation form, printed materials are subject to a Media Review where the material content is scrutinized to ensure that it is appropriate. Deputy Superintendent Hill and the Deputy Superintendent for Security review the material and once approved the employee (or donor) who wishes to bring the material, or item, into the facility is notified of the date it can be brought in.

On October 3, 2024, approximately 298 copies of The Final Call were found in Chaplain Muhammad's work area, only 31 of which had gone through the approval process. Chaplain Muhammad had previously submitted The Final Call through the approval process, but his last request had been submitted over a year earlier in March 2023. In January 2023 Deputy Superintendent Hill had alerted Chaplain Muhammad that she had received a copy of The Final Call in her work mailbox and that it had gotten into the facility without a gate pass. She reminded him that the publication had to go through Media Review, that she had previously explained that to him, and after a brief exchange of emails with him, she again reminded him that he needed gate passes for each copy of The Final Call. Also, in his 2020-21 performance evaluation, DOCCS informed him that he had previously been counseled for bringing in The Final Call without approval and that on October 10, 2020, the Library CO had confiscated unapproved copies that he was photocopying.

In an October 4, 2024 email to Five Points Superintendent Bishop Deputy Superintendent Hill outlined The Final Call editions that had been found in

Chaplain's office. The approved copies covered various volumes in 2021 and 2022, and the remaining that were not approved were dated in 2019 (1), 2020 (5), 2021 (74), 2023 (74), 2024 (98). In addition, there were 15 ""Miscellaneous Parts" from 2021, 2022, 2023, and one in 2024.

PEF contends that because the CBA limits discipline, except for acts which would constitute a crime, to one year prior to the NOD, none of the newspapers that were found in Chaplain Muhammad's office that pre-date October 15, 2023, can be considered. Further, PEF argues that the CBA requires that the NOD had to list the dates the newspapers were brought into the facility, which it did not include. Thus, even those newspapers dated within the one-year look-back period should not be considered as the dates the violations alleged occurred.

I do not dispute the CBA's requirement for specificity and don't take issue with panel arbitrators who have required strict adherence to them. However, DOCCS cannot provide specifications it has no knowledge of, nor that it is unable to determine. There is no evidence before me of how Chaplain Muhammad was able to bring into Five Points so many copies or editions of The Final Call and how they were able to pass through security without going through the approval process. And it is not known when they passed through security. DOCCS is required to specify dates of when misconduct is alleged to have occurred but it cannot provide information that it does not have nor has a way to discover.

But what is known is that there are some unapproved copies that were found in Chaplain Muhammad's possession within one year of the NOD. Moreover, Chaplain Muhammad does not dispute that he brought them in, nor does he dispute that he did not go through the approval process. It is not known whether all or some of the 267 unapproved editions or copies of The Final Call would have been considered contraband because of their content had they gone through the approval process, but what is known is that Chaplain Muhammad had possession of all of them within one year of the look-back period.

14

Regardless, those dated within one year of the NOD are certainly not barred by the one-year period. All those dated between October 15, 2023, and October 15, 2024, the date of the NOD, must have been brought into the facility during the one year prior to the NOD. Those include 17 issues in November and December 2023, and 98 in 2024. And whether there were 267 unapproved newsletters or 115, or for that matter, one, the issue is not how many Chaplain Muhammad brought into Five Points, but rather did he bring them in without passing them through the approval process.

I find, however, that DOCCS cannot discipline Chaplain Muhammad for his interaction with CO Kobbe on October 11, 2024. As PEF points out, he did not resist being searched, no harsh words were exchanged, whatever words they may have had did not take place in front of incarcerated individuals, and CO Kobbe characterization of him having an "attitude" is too vague. However, though he was not trying to hide the two copies of The Final Call he tried to bring into the facility, and again he had not gone through the approval process. Had CO Kobbe not inspected his bag there would yet have been another occasion of Chaplain Muhammad having unapproved newspapers within Five Points.

The record is also clear that he knew that he had to follow the procedures to bring The Final Call into Five Points. On numerous occasions he had brought in copies of the newsletter, and they were always approved. There is no reason to think that the ones found in his office or the ones he attempted to bring in on October 11 would not have been approved. But DOCCS is entitled to have its employees comply with its policies, especially ones addressing contraband in its facilities. That all The Final Calls that were submitted through DOCCS' procedure in the past were judged not to be contraband is no assurance that all others would be considered acceptable.

Chaplain Muhammad has worked for DOCCS for 19 years and other than a counseling memo, there is no evidence that he has ever been disciplined. His failure

to comply with DOCCS' contraband procedures and policies is serious but it does not warrant termination. The appropriate penalty is a 10-day suspension without pay.

Finally. I agree with PEF that I do not have jurisdiction over Chaplain Muhammad's suspension. The language the parties have negotiated states that such jurisdiction is extended if there is a triage finding of probable cause that a suspension meets the CBA criteria. By inference, here where there was a finding of no probable cause, I find that I do not have jurisdiction.

AWARD

The grievant, Ronald Muhammad, is guilty of the charges in the Notice of Discipline (NOD) dated October 15, 2024, apart from charge 3 alleging misconduct with CO Donna Kobbe, and there was just cause for the issuance of the NOD.

The proposed penalty of dismissal from State service and loss of any accrued leave is not appropriate.

The penalty shall the penalty a 10-day suspension without pay.

The Arbitrator does not have jurisdiction over the grievant's suspension.

Jeffrey R. Cassidy
Arbitrator
May 23, 2025


I, Jeffrey R. Cassidy, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

Jeffrey R. Cassidy
May 23, 2025

16

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Western District of New York

*PMT*
*7/9/25*
*3127 PM*
*DOCCS*

Ronald Muhammod
_____
Plaintiff(s)

v.

Civil Action No.

22-CV-6025

New York State Department of
_____
Defendant(s)

Corrections and Supervision

**SUMMONS IN A CIVIL ACTION**

To: *(Defendant's name and address)*
New York State Department of Corrections/Supervision
1220 Washington Avenue
Albany, New York 12226

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: **JUN 2 7 2025** _____     _____
Signature of Clerk or Deputy Clerk